PROVOSTY, J.
The will of the de cujus in this case is alleged to be null as containing a fidei commissum. It reads as follows:
“I leave and bequeath my property, as follows: I give and bequeath to my brother, James Ward, twenty dollars a month during his lifetime. My estate is to remain intact during the lifetime of my brother James. After the death of my brother James all my property shall go to my nephews, Matthew Ward and James B. Ward, share and share alike. Out of my estate I give and bequeath the sum of fifty dollars to St. Patrick’s Church, fifty dollars to St. Theresa’s Church, which sums are to be used for separate masses for the repose of the souls of my parents, sisters and brothers. I appoint my nephew, James B. Ward, my executor, with bond.”
In a subsequent will the testatrix “ratified and approved” this will, with the exceptions that sh,e made some special legacies of a minor character, and provided that $3,400 should be spent in building a tomb upon her lots in Metairie Cemetery, and finally as follows: “All monthly surplus after usufruct to my brother to go to Mat and James B. Ward.”
The testatrix requires- that her estate shall remain intact, and that of the monthly revenues $20 shall go to her brother, James Ward, and the balance to her nephews James B. and Mat Ward. She makes some special legacies, and requires that $3,400 be expended on a tomb, and appoints her nephew James B. Ward her executor, with bond. She provides that at the death of James Ward the estate shall go to her nephews James B. and Mat Ward.
Did she intend by this that her estate should remain in the hands of her executor until the death of her brother, James Ward; that is to say, for an indefinite period? Or did she intend that the estate should pass at once into the hands of James B. and Mat Ward, the executor to have seisin of only so milch of the estate as might: be necessary to build the tomb and pay or deliver the legacies?
If the latter, the will is, of course, unimpeachable. If the former, then the testatrix has imposed upon her executor duties not belonging to an ordinary executorship, and has made him a trustee to hold the estate for the benefit of her legatees, she has created a trust, or fidei commissum, and her will is null. Succession of McCan, 48 La. Ann. 156, *78 19 South. 220; Succession of Franklin, 7 La. Ann. 414; Succession of Kernan, 52 La. Ann. 51, 26 South. 749; Henderson’s Heirs v. Rost, 5 La. Ann. 460.
There cannot he much hesitation between these two interpretations. There can be no denying that the intention of the testatrix was that her estate should remain intact during the life of James Ward. If so, her intention could not have been that her nephews should each take one-half of it during the life of James Ward. In order that the nephews should, during the life of James Ward, each take one-half of the property, this clause for keeping the estate intact would have to be written out of the will; and, accordingly, we find the defenders of the will contending that the clause should be written out of the will. Where property is given under the condition that it shall be kept intact for an indefinite period, the condition is illegal, it is said, and under express statute must be disregarded. The fallacy of this contention lies in the fact that it assumes that the property has been given on this condition, whereas from the plain, explicit terms of the will the bequest is to have effect only after the expiration of the time during which the condition is to run. The estate, says the will, is to be kept intact during the life of James Ward, and after the death of James Ward is to go to James B. Ward and Mat Ward. The latter are not to take the property subject to this condition, but are to have it after the expiration of the time during which the condition is to run. The condition would have to be disregarded, not in order that they might hold, but in order that they might take.
The only possible reading of the will is that the bequest to James B. and Mat Ward is to take effect only after the death of James Ward, and that in the meantime the estate is not to be vested in any one, but is to remain intact in the hands of the executor, the monthly revenues to go to James Ward up to the amount of $20, and any surplus to James B. and Mat Ward. In other words, the executor is made a trustee for a period commensurate with the life of James Ward —that is to say, an indefinite period; and a trust estate, or a fidei commissum, is created.
In support of the contention that the estate vested at once in James B. and Mat Ward, the cases of Succession of Ducloslange, 4 Rob. 409; Succession of Barker, 10 La. Ann. 28; Succession of Law, 81 La. Ann. 456; Roy v. Latiolas, 5 La. Ann. 553-are cited, in which a testamentary disposition giving the usufruct to one person, and at the death of that person the property to another, was held to vest the naked ownership of the property at oncp in the second donee. The eases afford no assistance in the interpretation of this will. Their facts are different, and the question is one purely of fact, namely, what was the intention of the testatrix? Because a testator who has given the usufruct to one and the entire property to another at the death of the first is held to have intended that thé naked ownership should go at once to the second donee is no reason why a testator who has provided that his estate shall go to a particular person after the happening of a certain event should be held to have intended that the estate should go to that person at once, and before the happening of the event in question. The naked ownership, detached from the usufruct, is valueless, except from the fact that the usufruct is bound to become reunited to it at the death of the usufructuary, and constitute the perfect ownership. The testator failing to express himself with regard to what should become of the naked ownership pending the usufruct, it is reasonable to suppose, under the circumstances, that his intention was that it should be vested in thecperson in whom he desired that it should be vested when it would come to have value, that is to say, when the usufruct would become reunited to it. These considerations have no play in a case like the instant one, where the inquiry is as to the intentions of the testator with reference to the estate as a whole. Again, in those cases, whether the naked ownership was held to have vested at the death of the testator or only at the death of the usufructuary, the practical operation of the will was exactly and precisely the same. In either case the first legatee would have and enjoy during his life all the benefit of the property, and at his death the property would become vested absolutely in the second legatee. The question was, therefore, of interest only in connection with the validity or invalidity of the will. There could be no earthly reason, except inadvertence, why *80 the testator should not have provided that the naked' ownership should vest at once in the second legatee. In the instant case the situation is not the same. It may well be that by not keeping the estate intact in the hands of the executor until the death of James Ward the court would be thwarting the intentions of the testatrix, and in reality making a new will for her. Those cases may be said to be sui generis; and, besides, the conclusion arrived at in them has been reached only by a construction recognized to be latitudinarian even under their special facts, and certainly not to be stretched any further.
In the second will the testatrix refers to the monthly payment to be made to James Ward as the “usufruct to my brother.” Special stress is laid in the argument uiiou this use of the word “usufruct.” But we fail entirely to see wherein the use of this word supports the contention in favor of the validity of the will. No one could or does say that this monthly payment is a usufruct, or can be likened to one. What difference, then, can it make that the testatrix has mistakenly called it by that name?
Indeed, from the clause in which this word is found there arises a strong argument against the interpretation that the property was intended to become vested in James B. and Mat Ward during the lifetime of James Ward.. It is there provided that the monthly surplus over the $20 is to go to James B. and Mat Ward, This would indicate that the testatrix did not understand that the -property itself was to go, inasmuch as it would be not merely supererogatory, but even silly, to provide that the revenues of the property should go to the owners thereof.
It is therefore ordered, adjudged, and decreed that the judgment of the lower court herein be set aside, and that the following clause in the will of Annie Ward, deceased, viz., “I give and bequeath to my brother, James Ward, twenty dollars a month during his lifetime. My estate is to remain intact during the lifetime of my brother James. After the death of my brother James all my property shall go to my nephews” — be, and the same is hereby, declared to be null and void and of no effect, and that the same be stricken from said will. The succession of Annie Ward to pay the costs in both courts.