**ESTATE of Para Pierce ALDRICH, Deceased, City National Bank of Baton Rouge, Louisiana, Executor, Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 28645

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

May 12, 1970.

Rehearing Denied July 21, 1970.

Victor A. Sachse, Robert L. Roland, Baton Rouge, La., for petitioner-appellant.

Bruce A. McArdle, New Orleans, La., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Tax Division, K. Martin Worthy, Chief Counsel, Christopher J. Ray, Atty., I. R. S., Meyer Rothwacks, John S. Stephan, Attys., U. S. Dept. of Justice, Tax Div., Washington, D. C., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and MORGAN and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

■ The executor of the estate of Para Pierce Aldrich appeals the decision of the Tax Court that the Commissioner correctly determined a deficiency in the decedent's estate tax in the amount of $227,231.69. The case was submitted to the Tax Court on stipulations and briefs at the request of the parties. In view of the fact that counsel did not wish to orally argue the case in that court, we carefully examined the record and briefs to determine whether oral argument would be helpful to us in resolving the issues presented on this appeal. Concluding that it would not, we directed the clerk to place the case on the Summary Calendar.[1]

The appellant received the usual notice to counsel of that action, and has now moved to have the appeal placed on the regular calendar for oral argument. After reviewing our determination in light of the appellant's motion and supporting brief, we nevertheless remain convinced that oral argument would not be helpful. "Our Circuit's screening procedure demands extreme care and delicate (and unanimous) judicial action. Those requisites were met in this case." Allen v. Mississippi Commission of Law Enforcement, 424 F.2d 285, 287 (5th Cir., 1970.

The motion to remove the appeal from the Summary Calendar is accordingly denied.

I.

Mrs. Aldrich, a resident of Louisiana, died on August 9, 1965, leaving a will which was probated in Louisiana, and one section of which forms the basis of this appeal:

"6. I bequeath to the First Methodist Church, Baton Rouge, Louisiana, for use in connection with its Youth Educational Center, two thirds of the

---

1. Pursuant to Rule 18 of the Rules of this Court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Huth v. Southern Pacific Company, 417 F.2d 526 (5th Cir. 1969) and Murphy v. Houma Well Service, 409 F.2d 804 (5th Cir. 1969).

remainder of my estate and to the Cumberland Presbyterian Church, Dyersburg, Tennessee, the remaining one third thereof, but under these conditions:

(A) My executor shall reduce such remainder to cash and purchase bonds of the United States Government therewith the bonds to be delivered by him to said legatees in the proportion mentioned.

(B) The bequeaths (sic) contained in this paragraph shall be subject to a lifetime usufruct, which I now bequeath to my beloved sister, Elberta Pierce Forsythe, by which I mean that the income from any bonds which may later be purchased to replace them shall be paid over to my sister so long as she may live as such interest becomes due and is received."

The appellant (taxpayer) contends, as it did in the Tax Court, that it was entitled to deduct from the gross estate the full amount of the bequests to the Churches, without reduction for the actuarial value of the usufructuary interest in favor of the decedent's sister. The taxpayer maintains that the only item by which the charitable deduction, provided under section 2055 of the Internal Revenue Code of 1954, may be reduced is death taxes under section 2055(c).[2] It is further contended that section 20.2055–2(a) of the Estate Tax Regulations, providing for the reduction from a charitable deduction the present value of a noncharitable remainder "or similar interest", is inapplicable.[3] The

---

2. § 2055. Transfers for public, charitable, and religious uses

(a) In general.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made before the date prescribed for the filing of the estate tax return)—

(1) to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes;

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation;

*　　*　　*　　*　　*

(c) Death taxes payable out of bequests.—If the tax imposed by section 2001, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such bequest, legacies, or devises reduced by the amount of such taxes.

3. § 20.2055—2

§ 20.2055—2 Transfers not exclusively for charitable purposes

(a) Remainders and similar interests. If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in § 20.2031—7. Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible. To determine the present value of such remainder use the appropriate factor from column 4 of Table I or Table II of § 20.2031—7, whichever is applicable. If the interest transferred is such that its value is to be determined by a special computation (see paragraph (e) of § 20.2031—7), a request for a specific factor accompanied by a

taxpayer argues that since the bonds were delivered to the charities, the usufructuary interest reserved to the decedent's sister is not comparable to the common-law life estate, an interest in which Mrs. Aldrich's sister would have had possession of the bonds for life. In this respect, the taxpayer places emphasis on the language in § 2055(a) that "the taxable estate shall be determined by deducting from the value of the gross estate the *amount* of all bequests * * *." It is argued that "amount" means the sum of the bonds purchased and delivered to the charities. No "amount" was reserved to the decedent's sister; her interest was thus not includible in the interests intended to be covered by § 2055—trusts, remainders, and deferred payments.

■ The Tax Court declined "to walk the semantic tightrope" which the taxpayer sought to construct, and found it unnecessary "to delve into Louisiana law in order to determine the precise nature of the usufructuary interest of decedent's sister." Estate of Para Pierce Aldrich, CCH Tax Ct. Rep. (Memo.) Dec. No. 29,596(M) (1969) at 579; Estate of Para Pierce Aldrich, P–H. Tax Ct. Mem. Dec. ¶ 69,109 (1969) at 69–618. We, too, decline the invitation, because for federal tax purposes the label attached to an interest by state statute is irrelevant to the critical inquiry —the *nature* of the interest. It is settled that:

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

Morgan v. Commissioner, 309 U.S. 78, 80–81; 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940); see also Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199 (1932); Stewart v. Usry, 399 F.2d 50 (5th Cir. 1968).

In this case, the label given the interest is usufruct, defined in the Louisiana Code as:

"the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce, provided it be without altering the substance of the thing.

"The obligation of not altering the substance of the thing takes place only in the case of perfect usufruct."

LSA-C.C. art. 533 (West 1952). It was stipulated that the interest of the decedent's sister constituted a perfect usufruct.[4]

---

statement of the date of birth of each person the duration of whose life may affect the value of the remainder, and by copies of the relevant instruments, may be submitted by the executor to the Commissioner who may, if conditions permit, supply the factor requested. If the Commissioner does not furnish the factor, the claim for deduction must be supported by a full statement of the computation of the present value made in accordance with the principles set forth in the applicable paragraph of § 20.2031—7.

4. LSA-C.C.
   Art. 534. Kinds of usufruct
   Art. 534. There are two kinds of usufruct:

Perfect usufruct, which is of things which the usufructuary can enjoy without changing their substance, though their substance may be diminished or deteriorated naturally by time or by the use to which they are applied; as a house, a piece of land, furniture and other movable effects.
    And imperfect or *quasi* usufruct, which is of things which would be useless to the usufructuary, if he did not consume or expend them, or change the substance of them, as money, grain, liquors.
Art. 535. Perfect usufruct
    Art. 535. Perfect usufruct does not transfer to the usufructuary the ownership of the things subject to the usufruct; the usufructuary is bound to use them as

■ The Louisiana courts teach us that a usufruct is not a trust, see, e.g., Peyton v. Hammonds, 125 So.2d 491 (La.App. 3rd Cir., 1960), cert. denied; nor is the interest an exact counterpart to the classic common-law life estate. Succession of Ledbetter, 147 La. 771, 85 So. 908 (1920); Marshall v. Pearce, 34 La.Ann. 557 (1882). Nevertheless, it has been noted that for federal estate tax purposes,

"In Louisiana, the benefits of a life estate-remainder disposition can be obtained through utilizing the analogous usufruct-naked ownership disposition of the civil law. A testamentary disposition of the usufruct of property to the intermediate beneficiary avoids the 'second tax' which otherwise would be payable upon the death of the intermediate beneficiary.

\*     \*     \*     \*     \*     \*

"[T]he usufruct is a device which permits substantial utlimate tax-saving by avoiding a double tax incidence in the passage of property successively to two people.

"The usufruct-naked ownership disposition is [one of the three devices] \*  \*  \* permitted by Louisiana law which eliminates the taxation and succession costs of one succession during two deaths."

J. M. Wisdom & P.O.H. Pigman, Testamentary Dispositions in Louisiana Estate Planning, 26 Tulane L.Rev. 119, 128–30, 137–38 (1952); see generally M. W. Hickey, the Usufruct and Taxation, 8 La. B.J. 223 (1961); A. N. Yiannopoulos, Legal Usufructs, Louisiana and Comparative Law, 14 Loyola L. Rev. 1 (1967–68).

■ But the extent to which a usufruct approximates a life estate is not the point. The point, is as the Tax Court held, that the churches "held the bonds subject to a legally enforceable right in decedent's sister to receive the life income in the manner provided in the will itself. Under these circumstances, the value of what passed to the charities was correspondingly reduced." CCH Rep. at 579–80; P-H Rep. at 69–619. We therefore agree that in computing the § 2055 deduction, the value of the charitable bequests should be reduced to reflect the actuarial value of the usufructuary interest.

II.

■ The only other issue before us is whether the Commissioner utilized the correct method in computing the charitable deduction. The Tax Court approached and resolved the question in this manner:

"The second prong of the controversy herein relates to the method of calculating the charitable deduction because of the estate taxes payable from the residue by reason of paragraph 3 [5] of the decedent's will. Respondent repeatedly reduced the value of the charitable deduction by subtracting therefrom the estate and inheritance tax liability of the estate. This in turn reduced the amount passing to charity, thereby increasing the taxable estate, and the estate tax liability, and further reducing the amount passing to charity. Petitioner concedes that a reduction for estate taxes based upon a single calculation is proper but contends that respondent's use of a cumulative method of computation, although consistent with section 20.-

---

a prudent administrator would do, to preserve them as much as possible, in order to restore them to the owner as soon as the usufruct terminates.
Art. 536. Imperfect usufruct
Art. 536. Imperfect usufruct, on the contrary, transfers to the usufructuary the ownership of the things subject to the usufruct, so that he may consume,

sell or dispose of them, as he thinks proper, subject to certain charges hereinafter prescribed.

5. "3. I direct my executor to pay all estate and inheritance taxes out of the residue of my estate to the end that particular bequests shall not be reduced thereby."

**1400**

2055–3, Estate Tax Regs.,[6] vitiates the Congressional purpose of encouraging charitable testamentary transfers by causing an unwarranted reduction in the amount available to charity. We are aware of the significant impact of respondent's method. Nevertheless, that impact has been considered by the Congress, which reacted in a limited fashion in enacting section 2053(d) (70 Stat. 23; S. Rept. No. 1401, 84th Cong., 2d Sess. (1956), p. 3). And the use of such method has received judicial approval. Dulles v. Johnson, 273 F.2d 362 (C.A. 2, 1959); compare Edwards v. Slocum, 264 U.S. 61; [44 S.Ct. 293, 68 L.Ed. 564] (1924), with Harrison v. Northern Trust Co., 317 U.S. 476, [63 S.Ct. 361, 87 L.Ed. 407] (1943). See also Luehrmann's Estate v. Commissioner [of Internal Revenue] [287 F.2d 10 (8th Cir. 1961)]. We therefore hold that section 20.2055–3 of respondent's regulations and his determination thereunder are fully in accord with the statutory mandate of section 2055(c)."

CCH Rep. at 580; P-H Rep. at 69–619. (Footnotes omitted).

We agree. The decision of the Tax Court is, in all respects, accordingly

Affirmed.

---

6. § 20.2055—3 Death taxes payable out of charitable transfers

(a) If under the terms of the will or other governing instrument, the law of the jurisdiction under which the estate is administered, or the law of the jurisdiction imposing the particular tax, the Federal estate tax, or any estate, succession, legacy, or inheritance tax is payable in whole or in part out of any property the transfer of which would otherwise be allowable as a deduction under section 2055, section 2055(c) provides that the sum deductible is the amount of the transferred property reduced by the amount of the tax. Section 2055(c) in effect provides that the deduction is based on the amount actually available for charitable uses, that is, the amount of the fund remaining after the payment of all death Taxes. Thus, if $50,000 is bequeathed for a charitable purpose and is subjected to a State inheritance tax of $5,000, payable out of the $50,000, the amount deductible is $45,000. If a life estate is bequeathed to an individual with remainder over to a charitable organization, and by the local law the inheritance tax upon the life estate is paid out of the corpus

with the result that the charitable organization will be entitled to receive only the amount of the fund less the tax, the deduction is limited to the present value, as of the date of the testator's death, of the remainder of the fund so reduced. If a testator bequeaths his residuary estate, or a portion of it, to charity, and his will contains a direction that certain inheritance taxes, otherwise payable from legacies upon which they were imposed, shall be payable out of the residuary estate, the deduction may not exceed the bequest to charity thus reduced pursuant to the direction of the will. If a residuary estate, or a portion of it, is bequested to charity, and by the local law the Federal estate tax is payable out of the residuary estate, the deduction may not exceed that portion of the residuary estate bequeathed to charity as reduced by the Federal estate tax. The return should fully disclose the computation of the amount to be deducted. If the amount to be deducted is dependent upon the amount of any death tax which has not been paid before the filing of the return, there should be submitted with the return a computation of that tax.